UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NY DAILY NEWSWIRE, LLC,

Plaintiff,

-v-

ON LOCATION TOURS, INC.,

Defendant.

CIVIL ACTION NO. 25 Civ. 2815 (DEH) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE DALE E. HO**, United States District Judge:

## I. INTRODUCTION

Photographer Steve Sands captured a photograph of actress and singer Hailee Steinfeld wearing a period costume on a movie set in Brooklyn (the "Photograph"). (Dkt. Nos. 1 ¶ 2 (the "Complaint"); 1-1). After registering the Photograph with the United States Copyright Office, Sands assigned his rights in the Photograph to Plaintiff NY Daily Newswire, LLC ("NYDN"), of which he is the founder and owner. (Dkt. Nos. 1 ¶ 18; 21 ¶ 3). In 2022, NYDN noticed that Defendant On Location Tours, Inc. ("OLT") was displaying the Photograph on its website without NYDN's permission. (Dkt. No. 1 ¶¶ 23–26). After OLT ignored NYDN's written requests to remove the Photograph, NYDN filed this action for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq. (the "Act"). (Dkt. No. 1 ¶¶ 43–45). Despite being properly served, OLT defaulted, so on October 22, 2025, the Honorable Dale E. Ho adjudged that OLT violated NYDN's exclusive rights in the Photograph and referred the matter to the undersigned for an inquest on damages. (Dkt. Nos. 16; 29; 30; 31).

For the reasons set forth below, we respectfully recommend that a default judgment against OLT be entered awarding NYDN $6,700.00 in statutory damages, $4,850.00 in attorneys' fees, and $470.10 in costs.

## II. BACKGROUND

Given OLT's default, we accept as true all well-pleaded allegations in NYDN's Complaint, except as to damages. See City of New York v. Mickalis Pawn Shop, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Cawthon v. Nguyen, No. 22 Civ. 7398 (AS) (SLC), 2024 WL 1557301, at *1 (S.D.N.Y. Jan. 23, 2024), adopted by, 2024 WL 1555775 (S.D.N.Y. Apr. 10, 2024).[1]

### A. Factual Background

In his four-decade career as a photographer, Sands has focused on capturing images of "celebrities and people of high notoriety" and of "film and television productions during filming." (Dkt. No. 21 ¶ 4). He is the founder and owner of NYDN. (Id. ¶¶ 1, 3).

On September 30, 2018, Sands first published the Photograph. (Dkt. Nos. 1 ¶ 14; 1-1; 21 ¶ 7). To create the Photograph, he had traveled to Brooklyn during the filming of "Dickinson," a film in which Ms. Steinfeld was acting, and captured the image of her in period costume during a break in filming. (See Dkt. Nos. 1 ¶ 15; 21 ¶¶ 8–9). Sands created the Photograph for the purpose of licensing it to news and media outlets and publications. (Dkt. No. 21 ¶ 10). On October 4, 2018, Sands registered the Photograph with the United States Copyright Office. (Dkt.

[1] Internal citations and quotation marks are omitted unless otherwise indicated.

Nos. 1 ¶ 16; 21 ¶ 11; 21-2 at 7). Sands assigned all his rights in the Photograph to NYDN. (Dkt. Nos. 1 ¶ 18; 21 ¶ 12).

OLT is a New York-based sightseeing and touring company whose website, www.onlocationtours.com (the "Website"), generates profits for OLT by hosting paid advertisements and charging user fees. (Dkt. Nos. 1 ¶¶ 3, 19–22; 21 ¶¶ 14–17). Without NYDN's permission, OLT displayed the Photograph on the Website. (Dkt. Nos. 1 ¶¶ 23–29; 1-2; 21 ¶¶ 18–19; 21-3). On June 24, 2024 and August 2, 2024, NYDN's counsel sent OLT letters requesting a license compliance audit and complaining about the display of the Photograph on the Website. (Dkt. Nos. 1 ¶¶ 43-44; 22-8; 22-9). OLT did not respond to either letter. (Dkt. No. 1 ¶ 45).

### B. Procedural Background

On April 4, 2025, NYDN filed the Complaint (Dkt. No. 1), which NYDN served, along with the summons and order of reference, on OLT on April 18, 2025 by personal delivery to the Secretary of State for the State of New York, who is authorized to accept service on OLT's behalf. (Dkt. Nos. 5; 7; 8; 9; 22 ¶¶ 4–6). See Fed. R. Civ. P. 4(h)(1); N.Y. Bus. Corp. L. § 306(b)(1); N.Y. C.P.L.R. 311(a)(1). Pursuant to Federal Rule of Civil Procedure 12(a)(1), May 9, 2025 was the deadline for OLT to answer, move or otherwise respond to the Complaint, but OLT failed to do so or otherwise appear. (Dkt. No. 9; see Dkt. No.10). The Court sua sponte extended to May 15, 2025 OLT's deadline to respond to the Complaint, warning that failure to do so could result in default proceedings. (Dkt. No. 10). After OLT again failed to respond or appear, the Court ordered NYDN to initiate default proceedings. (Dkt. No. 11).

On May 28, 2025, the Clerk of the Court entered a certificate of default against OLT. (Dkt. No. 16 (the "CoD")). On July 10, 2025, NYDN filed a motion for default judgment (Dkt. No. 20

(the "Motion")), accompanied by supporting declarations, exhibits, and a statement of damages. (Dkt. Nos. 21–24 (the "Damages Submission")). In the Damages Submission, NYDN requests statutory damages of $6,700.00, representing five times the licensing fee an image comparable to the Photograph would generate on Getty Images, "the leading stock photography agency." (Dkt. No. 21 ¶¶ 27, 29). NYDN also seeks attorneys' fees of $5,118.50 and costs of $470.10 pursuant to 17 U.S.C. § 505. (Dkt. Nos. 1; 22 ¶¶ 22–39; see Dkt. Nos. 22-4; 22-7).

On October 2, 2025, Judge Ho ordered that OLT file any opposition to the Motion by October 16, 2025 and to appear and show cause on October 22, 2025 why the Motion should not be granted. (Dkt. No. 26 (the "OTSC")). After OLT failed to respond to the Motion or appear in court, on October 22, 2025, Judge Ho granted the Motion, adjudging that OLT had violated NYDN's "exclusive rights under 17 U.S.C. § 106 of the [] Act by engaging in unauthorized copying of" the Photograph, and referred the matter to the undersigned for a damages inquest. (Dkt. Nos. 29; 30 (the "Oct. 22 Order")).

On October 23, 2025, the undersigned ordered OLT to respond to the Damages Submission by November 6, 2025, warning that failure to respond or contact the Court would result in the issuance of a report and recommendation on damages based on NYDN's Damages Submission without an in-court hearing. (Dkt. No. 31 (the "Inquest Order")). NYDN promptly served the Inquest Order on OLT (Dkt. No. 32), but, to date, OLT has not responded to the Damages Submission or otherwise contacted the Court.

## III. DISCUSSION

### A. Legal Standards

#### 1. Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55. See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015) (per curiam). First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default. See Fed. R. Civ. P. 55(a). Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b). Whether to enter a default judgment lies in the "sound discretion" of the trial court. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.,

No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action").

### 2. Determining Liability

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Lopez, 2020 WL 915821, at *4.

### 3. Determining Damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing [its]

entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiff submits must be admissible. See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[D]amages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

**B. Application**

**1. Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of the Court entered the CoD as to OLT, and Judge Ho entered the Oct. 22 Order, holding that OLT "violated [NYDN's] exclusive rights under 17 U.S.C. § 106 of the Act by engaging in unauthorized copying of" the Photograph. (Dkt. Nos. 16; 30). Considering the relevant factors set forth above, the Court first finds, based on OLT's failure to submit any response to the Damages Submission after having been properly served (Dkt. No. 27), that OLT's default was willful. See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y.

Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct"). Second, delaying entry of a default judgment might prejudice NYDN, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), adopted by, 2009 U.S. Dist. LEXIS 6074 (S.D.N.Y. Jan. 26, 2009). Third, OLT has failed to respond to the Court's orders to appear and defend in this action. (Dkt. Nos. 26; 31). Thus, because the requirements of Rule 55 are satisfied and the relevant factors weigh in NYDN's favor, entry of default judgment fixing the award of damages to NYDN is proper.

### 2. Liability

While Judge Ho indicated in the Oct. 22 Order that OLT had violated the Act (Dkt. No. 30), in an abundance of caution we consider each of the elements of OLT's liability for copyright infringement.

#### a. Jurisdiction and Venue

As a threshold matter, the Court has subject matter jurisdiction over this action. NYDN sues under a federal statute – the Act – that gives rise to the Court's subject matter jurisdiction under 28 U.S.C. § 1331. The Court also has personal jurisdiction, "a necessary prerequisite to entry of default judgment" over OLT, a New York corporation (Dkt. No. 1 ¶ 6). Reilly v. Commerce, No. 15 Civ. 5118 (PAE) (BCM), 2016 WL 6837895, at *2–3 (S.D.N.Y. Oct. 31, 2016), adopted by, 2016 U.S. Dist. LEXIS 160884 (S.D.N.Y. Nov. 21, 2016); N.Y. C.P.L.R. § 301. NYDN also properly served OLT via the Secretary of State. (Dkt. Nos. 5; 9; 22 ¶¶ 4–6). See Fed. R. Civ. P. 4(h)(1); N.Y. Bus. Corp. L. § 306(b)(1); N.Y. C.P.L.R. 311(a)(1). Finally, venue is proper under 28 U.S.C. § 1391(b)(3).

**b. Statute of Limitations**

A civil action for copyright infringement must be "'commenced within three years after the claim accrued.'" Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014) (quoting 17 U.S.C. § 507(b)). The Second Circuit follows the "discovery rule," pursuant to which "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement[.]" Id. at 124–25. Thus, "an infringement claim does not accrue until the copyright holder discovers, or with due diligence should have discovered, the infringement." Id. at 124. "The standard for whether a plaintiff should have discovered the relevant infringement is an objective one." PK Music Performance, Inc. v. Timberlake, No. 16 Civ. 1215 (VSB), 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018); accord Minden Pictures, Inc. v. Complex Media, Inc., No. 22 Civ. 4069 (RA), 2023 WL 2648027, at *2 (S.D.N.Y. Mar. 27, 2023).

Here, the Complaint alleges that on April 6, 2022, NYDN "first observed" the Photograph on the Website, which was "[w]ithout permission or authorization from" NYDN, giving rise to the inference that NYDN discovered the infringement as of that date. (Dkt. No. 1 ¶¶ 23–26). NYDN filed the Complaint on April 4, 2025, with two days to spare before the expiration of the three-year statute of limitations. (Dkt. No. 1). In any event, OLT's failure to appear and assert a defense based on statute of limitations is a waiver of that defense. See Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district court ordinarily should not raise it sua sponte."); Clement v. United Homes, LLC, No. 10 Civ. 2122 (RRM), 2010 WL 4941489, at *2 (E.D.N.Y. Nov. 30, 2010) (deeming defendant's default to be a waiver of statute of limitations defense).

### c. Copyright Infringement

NYDN alleges that OLT, by posting the Photograph on the Website without license or permission, infringes NYDN's copyrights in the Photograph. (Dkt. No. 1 ¶¶ 4, 23–25, 48–53). As Judge Ho stated in the Oct. 22 Order, OLT's "default equates to a concession of liability as to the allegations in [NYDN]'s Complaint," Malibu Media, LLC v. Greenwood, No. 17 Civ. 1099 (PAE) (SLC), 2019 WL 7580083, at *3 (S.D.N.Y. Dec. 17, 2019), provided that the "allegations are sufficient to state a cause of action[.]" Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order). A claim of copyright infringement requires proof of two elements: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Abdin v. CBS Broad., Inc., 971 F.3d 57, 66 (2d Cir. 2020) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

As to the first element, under the Act, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." Id. Here, NYDN registered the Photograph on October 4, 2018, less than a week after its first publication. (Dkt. Nos. 1 ¶¶ 14, 16; 21-2 at 8). Thus, the registration is entitled to a statutory presumption of validity. See BMaddox Enter. LLC v. Milad Oskouie, Osko M Ltd., No. 17 Civ. 1889 (RA), 2021 WL 3675072, at *8 (S.D.N.Y. Aug. 18, 2021) ("BMaddox I").

As to the second element, the record establishes that OLT posted the Photograph on its website without NYDN's authorization. (Dkt. No. 1 ¶¶ 4, 23–25, 48–53; compare Dkt. No. 1-1, with Dkt. No. 1-2; see also Dkt. No. 21-3).

Accordingly, NYDN has established OLT's liability for copyright infringement under the Act as a matter of law. See Malibu Media, 2019 WL 7580083, at *3 (holding that defendant's default was concession of liability for copyright infringement, which was adequately pled based on allegations of plaintiff's ownership of valid copyrights and defendant's copying without authorization).

**3. Damages**

OLT's liability for copyright infringement under the Act having been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm., 2016 WL 3365313, at *3. NYDN seeks statutory damages of $6,700.00, attorneys' fees of $5,118.50, and costs of $470.10. (Dkt. No. 23 at 29).

As an initial matter, the Court finds that a hearing is unnecessary because NYDN's Damages Submission and the record constitute a "sufficient basis from which to evaluate the fairness of" his damages request. Fustok, 873 F.2d at 40; see McDermott v. NYFireStore.com, Inc., No. 18 Civ. 10853 (AJN) (SLC), 2021 WL 952455, at *3 (S.D.N.Y. Jan. 15, 2021) (finding no hearing necessary where plaintiff requested statutory damages), adopted by, 2021 WL 950507 (S.D.N.Y. Mar. 12, 2021); Craine v. Beyond the W, LLC, No. 19 Civ. 2259 (JMA) (AYS), 2021 WL 930255, at *2 (E.D.N.Y. Mar. 11, 2021) (same); Hirsch v. Sell It Soc., LLC, No. 20 Civ. 153 (LTS) (BCM), 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5, 2020) (same). Further, no party has requested an in-person hearing. (Dkt. No. 23 at 21; see Dkt. No. 31).

**a. Statutory Damages**

**i. Legal Standard**

"Pursuant to Section 504 of the [] Act, a copyright owner is entitled to recover the actual damages the infringer caused, plus any profits the infringer gained, or statutory damages." Malibu Media, 2019 WL 7580083, at *3 (citing 17 U.S.C. § 504(a)). A copyright owner who elects to recover statutory damages instead of actual damages may recover damages "of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "Statutory damages are available without proof of plaintiff's actual damages, and are useful in cases where proof of actual damages or profits is insufficient." EMI Apr. Music Inc. v. 4MM Games, LLC, No. 12 Civ. 2080 (DLC) (JLC), 2014 WL 325933, at *3 (S.D.N.Y. Jan. 13, 2014), adopted by, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014). The Act gives a court "wide discretion" to set the amount of statutory damages." Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1116 (2d Cir. 1986). Courts in this Circuit consider the following factors in exercising discretion to set the amount of statutory damages:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Myeress v. Elite Travel Grp. USA, No. 18 Civ. 340 (AJN), 2018 WL 5961424, at *3 (S.D.N.Y. Nov. 14, 2018) (quoting Bryant v. Media Right Prods., 603 F.3d 135, 144 (2d Cir. 2010)). In addition, the Court is "guided by the calculations of other courts in this Circuit to ensure [NYDN] receives a fair and just recovery." Serio v. Skijor, USA, Inc., No. 23 Civ. 438 (LJL), 2023 WL 8372894, at *3 (S.D.N.Y. Dec. 4, 2023).

In addition, where the defendant's infringement is willful, the Act gives the court discretion to increase the award up to $150,000 per work. See 17 U.S.C. § 504(c)(2). Where there is evidence of willfulness, the "court should consider incorporating both a compensatory and punitive component to discourage further wrongdoing by the defendants and others." Whitehead v. Mix Unit, LLC, No. 17 Civ 9476 (VSB) (JLC), 2019 WL 384446, at *3 (S.D.N.Y. Jan. 31, 2019), adopted by, 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019).

**ii. Application**

OLT's failure to appear and produce discovery in this action renders it difficult to evaluate most of the discretionary factors set forth above. OLT's default, as well as its continued display of the Photograph on the Website after receiving NYDN's letters requesting removal, constitute some evidence of willfulness. See Cawthon v. Pan Nuan Nuan, No. 22 Civ. 3019 (DLC), 2023 WL 2758435, at *2 (S.D.N.Y. Apr. 3, 2023) ("Courts in this district have consistently held that '[c]opyright infringement is deemed willful by virtue of a defendant's default.'") (quoting Rovio, 97 F. Supp. 3d at 546); Hirsch, 2020 WL 5898816, at *2 (finding that defendant's default was evidence of willfulness).

The remaining factors, however, "either militate against a substantial award or are indeterminable upon the record before the Court." Hirsch, 2020 WL 5898816, at *4. As to the second factor, NYDN has not alleged any amount of profits OLT may have gained from having the Photograph on the Website, other than to allege on information and belief that OLT "has received a financial benefit directly attributable to the Infringement[,]" which "increased traffic to the Website" and "caused [OLT] to realize an increase in its business revenues." (Dkt. No. 1 ¶¶ 37–38).

As to the third factor, NYDN has introduced evidence that the license fee for a comparable photo is $1,340.00, to which it applies a multiplier of five to result in the $6,700.00 statutory damages request. (Dkt. Nos. 21 ¶ 27; 21-4). This five-time multiplier is consistent with what other courts in this District have recently awarded for infringement of a single photograph. See, e.g., Romanova v. Amilus Inc., No. 22 Civ. 8948 (VEC), 2025 WL 3442700, at *1 (S.D.N.Y. Dec. 1, 2025) (awarding $6,002.10 in statutory damages, which was five times the license fee, for infringement by posting a photograph on a website); Green v. Akonik Label Grp. LLC, No. 19 Civ. 7492 (PGG) (OTW), 2022 WL 2817311, at *3 (S.D.N.Y. July 19, 2022) (collecting cases awarding between $750 to $5,000 for single use copyright infringement).

The fourth factor, the need to deter the infringer and third parties, weighs against a substantial statutory damages award here. As one court in this District has recognized, "if the need to deter any infringement warranted a statutory damages award for tens of thousands of dollars, Congress would not have permitted awards as low as $750." Serio, 2023 WL 8372894, at *4. "Instead, courts have concluded that the need for specific deterrence is particularly acute when the defendant is 'a serial copyright infringer, or . . . continues to infringe copyrights in spite of repeated notices of infringement.'" Id. (quoting Parsons v. Bong Mines Ent. LLC, No. 19 Civ. 813 (JMA) (AKT), 2021 WL 931506, at *9 (E.D.N.Y. Feb. 18, 2021), adopted by, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021)); see Bass v. Diversity Inc. Media, No. 19 Civ. 2261 (AJN), 2020 WL 2765093, at *4 (S.D.N.Y. May 28, 2020) (finding that absence of evidence of serial infringement or continued infringement despite repeated notices of infringement weighed against substantial award). Here, while there is no evidence that OLT is a serial infringer, OLT did appear to continue infringing the NYDN's copyright after receiving the letters. Applying the five-

times multiplier sufficiently accounts for OLT's disregard of NYDN's overtures. See Broadcast Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) (finding that five times licensing fee was "sufficient to . . . punish defendants for their acts of infringement").

As to the fifth factor, the infringer's cooperation in providing evidence of the value of the infringing material, OLT's "default weighs in favor of a substantial statutory award." Parsons, 2021 WL 931506, at *9 (collecting cases holding that default warranted substantial award).

As to the sixth factor, the conduct and attitude of the parties, OLT's default weighs in favor of granting NYDN the amount of statutory damages it has requested. See Romanova, 2025 WL 3442700, at *1 (awarding amount of statutory damages plaintiff proposed). In the absence of additional evidence, such as NYDN's own licensing history for the Photograph or comparable images – as opposed to the example of a Getty licensing fee – a larger award is not warranted. See Keivom v. New Russian Word Inc., No. 24 Civ. 3573 (DEH) (RFT), 2025 WL 2941222, at *8 (S.D.N.Y. May 23, 2025) (finding that plaintiff's failure to provide actual licensing fee warranted smaller award), adopted by, 2025 WL 2939121 (S.D.N.Y. Oct. 16, 2025); Parsons, 2021 WL 931506, at *10 (collecting cases declining to award larger statutory damages in absence of evidence of plaintiff's licensing fees or defendant's willfulness).

Our balancing of all six factors demonstrates that awarding NYDN's requested amount of $6,700.00, which is five times the multiple of a Getty licensing fee for a comparable image, is sufficient to remedy NYDN's injury, punish OLT for its infringement, and deter others from unauthorized use of copyrighted photographs on their websites. See Broadcast Music, 158 F. Supp. 3d at 199 (awarding statutory damages of five times licensing fee).

**b. Prejudgment Interest**

In the Complaint, NYDN requested prejudgment interest, but in the Damages Submission, NYDN does not mention interest. (Compare Dkt. No. 1 at 7, with Dkt. Nos. 23–24). "[T]he Copyright Act neither allows nor prohibits an award of pre-judgment interest, and the issue of the permissibility of pre-judgment interest is unresolved in this Circuit." Tetra Images, LLC v. Grahall Partners, LLC, No. 19 Civ. 5250 (PMH), 2021 WL 2809566, at *6 (S.D.N.Y. July 6, 2021) (quoting Capitol Recs., Inc. v. MP3tunes, LLC, No. 07 Civ. 9931 (WHP), 2015 WL 13684546, at *4 (S.D.N.Y. Apr. 3, 2015)). "District courts thus have the discretion to award or not award pre-judgment interest in copyright cases and cases where other federal law is similarly neutral." Joe Brands LLC v. Edcmaker, No. 21 Civ. 5278 (LLS) (RWL), 2023 WL 8591613, at *4 (S.D.N.Y. Nov. 28, 2023), adopted by, 2023 WL 8763450 (S.D.N.Y. Dec. 19, 2023).

Here, "[a]s the authority to grant prejudgment interest is not clear" — and NYDN did not elaborate on this issue in the Damages Submission — "the Court is not inclined to grant that relief." Tetra, 2021 WL 2809566, at *6; see Stokes v. MilkChocolateNYC LLC, No. 22 Civ. 6786 (PAE) (RWL), 2023 WL 4447073, at *12 (S.D.N.Y. June 20, 2023) (recommending denial of prejudgment interest on copyright infringement claims), adopted by, 2023 WL 4447073 (S.D.N.Y. July 11, 2023). Accordingly, we respectfully recommend that no prejudgment interest be awarded.

**c. Attorneys' Fees**

NYDN seeks attorneys' fees of $5,118.50, for 15.3 hours of time incurred by three attorneys and two paralegals at the Sanders Law Group (the "Firm"). (Dkt. Nos. 24 ¶ 8; 22-4 at 4). In support of this request, NYDN has submitted contemporaneous time records, which are

important to assist the Court in evaluating the reasonableness of the fees. See Morozov v. ICOBOX Hub Inc., No. 18 Civ. 3421 (GBD) (SLC), 2020 WL 5665639, at *8 (S.D.N.Y. May 5, 2020) (explaining that "a fee application should be supported by 'contemporaneous time records' relaying the rates charged and the hours worked by each attorney") (quoting N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

### i. Legal Standard

"A court may award reasonable attorneys' fees and costs to a prevailing party under the [] Act." McDermott, 2021 WL 952455, at *3 (citing 17 U.S.C. § 505); see Malibu Media, 2019 WL 7580083, at *4. An award of attorneys' fees in a copyright action is "not automatic," but rather "'a matter of the court's discretion.'" Lucerne Textiles, Inc. v. H.C.T. Textiles Co.. Ltd., No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *4 (S.D.N.Y. Jan. 17, 2013) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)), adopted by, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013).

In analyzing whether to award attorneys' fees under the Act, courts consider several factors, including "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant, 603 F.3d at 144 (citing Fogerty, 510 U.S. at 534 n.19). The Court must give "substantial weight" to the third factor, objective unreasonableness. Bryant, 603 F.3d at 144 (citing Matthew Bender & Co. v. W. Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001)).

In calculating a reasonable award of attorneys' fees, the Court must determine the "presumptively reasonable fee" by looking to "what a reasonable, paying client would be willing to pay[.]" Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183–84 (2d Cir. 2008); see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The most useful

starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The Second Circuit has explained that the "presumptively reasonable fee" is "the product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter." Solano v. Andiamo Cafe Corp., No. 19 Civ. 3264 (SN), 2021 WL 2201372, at *1 (S.D.N.Y. June 1, 2021) (citing Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011)). A party requesting an award of attorneys' fees must provide "contemporaneous time records establishing 'for each attorney [for whom fees are sought], the date [on which the work was performed], the hours expended, and the nature of the work done.'" Annuity, Welfare & Apprenticeship Skill Imp. & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C, and 15D v. Integrated Structures Corp., No. 12 Civ. 436 (LGS) (KNF), 2013 WL 2649644, at *7 (S.D.N.Y. June 13, 2013) (quoting Carey, 711 F.2d at 1154), adopted by, 2013 WL 3684933 (S.D.N.Y. July 12, 2013).

**ii. Application**

We conclude that an award of attorneys' fees is warranted in this case given OLT's default and because an award of attorneys' fees "will further serve the goal of deterrence of copyright infringement." See Mockingbird 38, LLC v. Int'l Bus. Times, Inc., No. 21 Civ. 283 (LJL), 2022 WL 154137, at *6 (S.D.N.Y. Jan. 18, 2022). We determine the appropriate amount of the award using the framework set forth above.

**a) Reasonable Hourly Rate**

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill." Galeana v. Lemongrass on Broadway Corp.,

120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)). A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the 'undesirability' of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley, 461 U.S. at 430 n.3). The movant bears the "burden to establish the prevailing market rate." Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., No. 13 Civ. 2548 (KMW) (JLC), 2014 WL 1303434, at *8 (S.D.N.Y. Apr. 1, 2014).

Three attorneys and two paralegals at the Firm recorded 15.3 hours to NYDN's matter. (Dkt. No. 22-4 at 4). The most senior timekeeper, Craig Sanders, Managing Partner at the Firm with over 30 years of litigation experience, requests an hourly rate of $895. (Dkt. Nos. 22 ¶¶ 28–31; 22-4 at 4). "Courts awarding attorneys' fees in copyright cases have regularly found rates in the range of $400 to $750 an hour for partners to be reasonable." BMaddox Enters. LLC v. Oskouie, No. 17 Civ. 1889 (RA) (SLC), 2023 WL 1418049, at *4 (S.D.N.Y. Jan. 6, 2023) (collecting cases) ("BMaddox II"), adopted by, 2023 WL 1392075 (S.D.N.Y. Jan. 30, 2023); see Hirsch, 2020 WL 5898816, at *5 (finding $425 to be reasonable hourly rate for partner in copyright case); Bass, 2020 WL 2765093, at *6 (collecting cases finding reasonable range of $350 to $500 for partner in copyright case). Sanders' requested rate of $895 is higher than what other courts in this District

and the Eastern District of New York have recently deemed reasonable for Sanders. See, e.g., Corey Sipkin Photography LLC v. New Yirui Culture NY, Inc., No. 24 Civ. 8354 (ERK) (JAM), 2025 WL 2653826, at *6 (E.D.N.Y. Sept. 16, 2025) (deeming $550 reasonable hourly rate for Sanders); Cannon v. Historical Design, Inc., No. 24 Civ. 7662 (JHR) (GWG), 2025 WL 2599889, at *6 (S.D.N.Y. Sept. 9, 2025) (awarding Sanders' uncontested hourly rate of $750 given his "extensive experience"). Given the procedural and factual similarities to Cannon, we similarly deem it reasonable to reduce Sanders' hourly rate to $750, particularly given his minimal role – expending less than one-half hour – on this matter.

The second most senior timekeeper, Jonathan M. Cader, a senior associate with over a decade of litigation experience, seeks an hourly rate of $600. (Dkt. Nos. 22 ¶¶ 32–34; 22-4 at 4). This rate, too, is higher than what other courts in this and the Eastern District have recently deemed reasonable for Cader. See, e.g., Jeremiah v. DBG Media Publishers of Our Time Press Inc., No. 25 Civ. 1822 (AMD) (CLP), 2025 WL 3461162, at *10–11 (E.D.N.Y. Nov. 4, 2025) (reducing Cader's hourly rate from $600 to $400), adopted by, 2025 WL 3461451 (E.D.N.Y. Dec. 2, 2025); Martinka v. RentOwnSell LLC, No. 24 Civ. 5289 (JHR) (HJR), 2025 WL 2177258, at *9 (S.D.N.Y. July 31, 2025) (deeming $500 reasonable hourly rate for Cader). Given the procedural and factual similarities to Martinka, we similarly deem it appropriate to award Cader an hourly rate of $500.

The third attorney on NYDN's matter, Joshua D. Vera, a junior associate with about four years of litigation experience, seeks an hourly rate of $250. (Dkt. Nos. 22 ¶¶ 25–26; 22-4 at 4). This rate is consistent with what other courts in this District have recently awarded Vera in similar copyright infringement damages inquests. See, e.g., Cannon, 2025 WL 2599889, at *6. We therefore deem his requested hourly rate of $250 to be reasonable here.

Finally, NYDN seeks an hourly rate of $150 for two paralegals. (Dkt. No. 22-4 at 4). In the absence of any "evidence showing that [these] paralegal[s] ha[ve] special qualifications in the form of paralegal training, licenses, degrees, or certifications or longer paralegal experience, courts have typically awarded fees at the lower rate of $100-per-hour for that paralegal." Cannon, 2025 WL 2599889, at *6. We therefore find an hourly rate of $100 to be reasonable for the two paralegals.

**b) Hours Reasonably Expended**

To determine the reasonable number of hours required by a case, the critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam). "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly." Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016) (quoting Hensley, 461 U.S. at 434), adopted by, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016). The Court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134. An across-the-board percentage reduction is permitted as a "practical means of trimming fat from a fee application." Carey, 711 F.2d at 1146.

As noted above, the attorneys and paralegals at the firm spent a total of 15.3 hours on NYDN's matter. (Dkt. No. 22-4 at 4). Cader and Vera expended more than half of this amount –

12.7 hours – demonstrating efficient delegation of tasks to attorneys with lower hourly rates. See, e.g., Perez v. Rossy's Bakery & Coffee Shop, Inc., No. 19 Civ. 8683 (SLC), 2021 WL 1199414, at *11 (S.D.N.Y. Mar. 30, 2021) (noting that delegation of tasks to employees with lower hourly rates was "a mark of efficiency"). Accordingly, we do not find it necessary to reduce the number of hours awarded. See Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *6 (S.D.N.Y. Jan. 7, 2004) (approving amount of hours requested as reasonable).

Applying the reasonable hourly rates set forth above, we respectfully recommend that NYDN be awarded attorneys' fees in the total amount of $4,580.00, calculated as follows:

| Timekeeper | Requested Rate | Awarded Rate | Hours Expended | Amount |
|---|---|---|---|---|
| C. Sanders | $895 | $750 | 0.3 | $225.00 |
| J. Cader | $600 | $500 | 3.8 | $1,900.00 |
| J. Vera | $250 | $250 | 8.9 | $2,225.00 |
| A. Marra | $150 | $100 | 1.3 | $130.00 |
| J. Busch | $150 | $100 | 1.0 | $100.00 |
| **TOTAL** | | | | **$4,580.00** |

### d. Costs

NYDN seeks reimbursement of $470.10 in costs under 17 U.S.C. § 505. (Dkt. Nos. 23 at 28–29; 24 ¶¶ 14–15). The Court takes judicial notice of the filing fee reflected on the docket as support for an award of that cost. See Cawthon v. Nguyen, 2024 WL 1557301, at *12; McDermott,, 2021 WL 952455, at *6 (same), adopted by, 2021 WL 950507 (S.D.N.Y. Mar. 12, 2021). Because NYDN provided the Court with contemporaneous documentation showing that the Firm paid $65.10 for service fees (Dkt. No. 22-7), NYDN has adequately substantiated its request for that cost. See Sanchez v. Jyp Foods Inc., No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (noting that adequate substantiation is required for an award of costs). Accordingly, we respectfully recommend that NYDN be awarded $470.10 in costs.

## IV. CONCLUSION

For the reasons set forth above, we respectfully recommend that NYDN be awarded a default judgment against OLT consisting of $6,700.00 in statutory damages, $4,580.00 in attorneys' fees, and $470.10 in costs.

Dated: New York, New York
December 15, 2025

**SARAH L. CAVE**
**United States Magistrate Judge**

* * *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any request for an extension of time for filing objections must be addressed to Judge Ho.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).